UNITED STATES DISTRICT COURT **FILED**
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD PATTERSON | : CIVIL ACTION NO. 3:02 CV 1137(JCH) |
| Plaintiff, | : U.S. DISTRICT COURT |
| v. | : BRIDGEPORT, CONN |
| THE FOOD GROUP LLC/POND HOUSE CAFÉ | : |
| Defendants. | : April 21, 2004 |

2004 APR 22  P 12:58

## PLAINTIFF'S OBJECTION TO HON. MAG. FITZSIMMONS RULING IN RESPONSE TO DEFENDANT'S RESPONSE TO THE PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS.

Plaintiff, RONALD PATTERSON reiterate his objection to Hon. Mag. Fitzsimmons's ruling dated March 31, 2004 in that THE FOOD GROUP LLC/POND HOUSE CAFÉ'S hereinafter "FOOD GROUP" response to the Plaintiff's Production of Documents pursuant to 28 § 636 (b) (1) (A) ,Fed R. Civ. P. 72 (a).

The Plaintiff filed an objection on or about April 15, 2004. The Food Group submitted their response dated April 16, 2004.

This ruling leaves the plaintiff unprepared for trial and unequal access to the discovery process  There should be responsive documents for the requests made, because the information should be readily available Fed. R. Civ. P. 26 (a) (1).

The Plaintiff is requesting date of hire, race, age, sex and date of term, laid off, quit or still employed of individuals between May 2001 and October 2001. The plaintiff claims hiring practices and status of individuals such as Mr. Baird who was employed are at issue in this case. The plaintiff is not requesting applicants that have been considered

1

for employment, only those who were hired. The plaintiff requests the names of these individuals be included.

The plaintiff's position is still the same as to the payroll including tips report and payment records of Mr. Baird, Ms. Gilchrist, Ms. Kate Moss, and plaintiff. The plaintiff was hired and worked as a waiter in the café. See (letter from Café Manager Mr. Paul Deveau exhibit A also used as an exhibit D in defendant's motion for summary judgement).

Ms. Yoder Esq. attorney for the defendants clearly stated at the plaintiff's deposition" but what you can ask in discovery is a lot broader than what you can ask at trial. Further state " what I can ask is anything that I believe might lead me to find helpful evidence." Again, it is clearly a common practice in the district courts dealing with civil actions that request for production is a broad discovery. Therefore, the defendants should fully comply with the discovery requests. Sanctions are proper for a continuing failure to fully comply within a certain amount of days pursuant to Fed. Civil Rules and order defendants to comply with the requests.

PLAINTIFF, RONALD PATTERSON

By: *Ronald Patterson*
Ronald Patterson
133 Huntington Street #1
Hartford, CT. 06015
Tel. (860) 728-57591

2

September 18, 2001

To whom it may concern:

On the Wednesday evening of June 6, 2001 as cafe manager and host at the Pond House Cafe. I assigned to Ron Patterson, one of two waitstaff on that evening, the closing position that evening. At this point Ron had been working for approximately four weeks and during his training had shared the closing duties with the other staff persons. Ron acknowledge my instructions and expressed no concerns about the instructions. All sidework duties are listed in plain sight in the kitchen and are checked by the floor manager before staff is allowed to clockout.

As the evening came to a close and all customers had left, I took the waitstaff''s guest checks and money to the office start the daily closeout. Kate Moss, the other waitperson on that evening finished her sidework, I checked it and she left. Approximately ten minutes later went to check on Ron and could not find him. I checked with the kitchen staff and they had not seen him.

Upon inspection I noted that the cafe still had dirty tables, food, plates, silverware, glasses and burning candles on several tables. The carpet had not been vacuumed, and much of the other closing sidework had not been completed including several kitchen areas.

Thinking Ron must be taking a break, or might be somewhere else in the building I went to find him to check on his progress. When I could not find him, I checked to the computer clockout and noted Ron had already clocked out and presumably left the building.

I went outside to see if I could catch him and saw him sitting on the lawn about 200 feet from the building. I went to him and asked why he left without finishing his sidework and letting me know he was leaving. He said he did all his sidework. I explained to him that his tables were still dirty and he had burning candles on them and that the dining room and kitchen sidework had not been started he said he thought he had done it all, but agreed to come back in.



Exhibit A

call Thursday he argued with me and said she had not. I told him I would not schedule another person while I was training two new persons. He started complaining that I didn't want to hire him and that he was more than qualified to do the job. I told him that there were shifts available in the banquet room if he wanted them but the cafe shifts were not available while I was training the new waitstaff. I asked him to call back on Thursday and that I would speak to Kim in the meantime.

I spoke with Kim and mentioned my apprehensions about hiring someone that has had so many communication problems with her already after only two or three shifts in the banquet room. Ron's assertiveness and his claim of waitering skills won out over my concerns about our communication problems.

As far as waiter skills Ron was not up to his claims of being an experienced waiter with skills in serving in similar cafe environments. He started out very enthusiastically, questioning the chef on certain food items, tastes, and ingredients. This was very impressive and many of my fears were temporarily put aside.

After 3 1/2 weeks as a server, Ron was still not familiar with the menu. As a server this is a crucial element to good service. On several occasions the wrong dishes were given to guests because he did not recognize what he was serving. Ron was frequently overwhelmed to the point where his customers service was severely hindered when he was given an equal wait section as some of the other waitstaff. Eventually we began to reduce his section size to fit his abilities better. This was met with very harsh statements of implied racial prejudice and unfare treatment as stated by Ron. When the actual reasons were pointed out they were dismissed as not true and not fare in Ron's opinion.

Sincerely,

*Paul Deveau* (signature)

Paul Deveau, Manager

## CERTIFICATION

I hereby certify that the foregoing Plaintiff's Objection to Magistrate Fitzisimmons's ruling mailed postage prepaid on this 21st day of April 2004 to the following :

| | |
|---|---|
| Ms.Linda L. Yoder Esq.<br>Shipman & Goodwin LLP<br>One American Row<br>Hartford, CT. 06103-2819 | Mr. Steve Sedor Esq.<br>Shipman & Goodwin LLP<br>One American Row<br>Hartford, CT. 06103-2819 |

*Ronald Patterson*
Ronald Patterson

3